UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 4:20-cv-10094-KMM

BIANCA N. DIGENNARO,

    Plaintiff,

v.

MICHAEL L. MALGRAT, *et al.*,

    Defendants.

_____/

## **ORDER**

THIS CAUSE came before the Court upon Defendants Michael L. Malgrat ("Malgrat"), Kenneth Waite ("Waite"), Fred C. Sims ("Sims") and the City of Key West's ("City") (collectively, "Defendants") Motion for Summary Judgment. ("Mot.") (ECF No. 60). Plaintiff filed a Brief in Opposition. ("Resp.") (ECF No. 63). Defendants filed a Reply. ("Reply") (ECF No. 67). The Motion is now ripe for review.

**I.    BACKGROUND**[1]

On December 14, 2018, HMM,[2] an eight-(8)-year-old boy, was arrested by City of Key West law enforcement officer Malgrat for felony battery on an educational employee pursuant to Fla. Stat. § 784.081. Defs.'s 56.1 ¶ 1; Pl.'s Resp. 56.1 ¶ 1. HMM has a history of displaying anger issues and authority defiance. Defs.'s 56.1 ¶ 2; Pl.'s Resp. 56.1 ¶ 2. HMM had an Individualized Education Program ("IEP") plan in place and was designated as a "special needs child." Pl.'s Resp.

---

[1] The undisputed facts are taken from Defendants' Statement of Material Facts in Support of Their Combined Motion for Summary Judgment ("Defs.'s 56.1") (ECF No. 61), Plaintiff's Response to Defendants' Statement of Facts ("Pl.'s Resp. 56.1") (ECF No. 64), Defendants' Reply Statement of Material Facts ("Defs.'s Reply 56.1") (ECF No. 68), and a review of the corresponding record citations and exhibits.

[2] Pursuant to Rule 5.2(a) of the Federal Rules of Civil Procedure, HMM's initials are used in lieu of his full name because he is a minor. Fed. R. Civ. P. 5.2(a).

56.1 ¶ 17. During the relevant school year, and particularly during the week leading up to his arrest, HMM's behavioral problems were more pronounced. *Id.* HMM's father was called to the school by school officials a total of four (4) times the week of the arrest. *Id.* The events leading up to the arrest are somewhat disputed, however the undisputed facts show that: (1) HMM was sitting improperly in the school cafeteria while the students were watching a video; (2) a teacher, Ashley Henriquez ("Henriquez") instructed HMM to sit properly more than once, and in the second instance HMM refused to comply; (3) some sort of altercation between Henriquez and HMM ensued;[3] (4) HMM told Henriquez that his mother was going to either "beat her [expletive]" or "kick [her expletive]"; and (5) HMM intentionally struck Henriquez in the chest.[4] Defs.'s 56.1 ¶¶ 4–5; Pl.'s Resp. 56.1 ¶¶ 4–5. Shortly thereafter, Henriquez escorted HMM to the school office and informed Malgrat that HMM had hit her. Defs.'s 56.1 ¶ 7; Pl.'s Resp. 56.1 ¶ 7.

The school contacted HMM's father, Herschell Major II ("Major"), who reported to the school. A discussion between Malgrat and Major took place wherein Major expressed that he wanted HMM to be placed in handcuffs, although the Parties dispute the relevance of Major's statement along those lines. Defs.'s 56.1 ¶ 9; Pl.'s Resp. 56.1 ¶ 9. Plaintiff argues that "no proposed final plan was ever discussed and [Major] never told Malgrat to go ahead and handcuff HMM." Pl.'s Resp. 56.1 ¶ 9. Defendants argue that "Malgrat did not agree to undertake any

---

[3] The details of the altercation are disputed. Defendants argue that Henriquez attempted to deescalate the situation verbally, HMM stood up and threatened Henriquez, and then HMM punched Henriquez in the breast "in a manner she interpreted (and still interprets) as a clearly deliberate and intentional blow." Defs.'s 56.1 ¶ 4–5. Plaintiff argues that Henriquez grabbed HMM's wrist and then picked him up, at which point HMM "pushed against Henriquez's chest once with his right hand to free himself." Pl.'s 56.1 ¶ 4–5. Ultimately, this dispute is not relevant to the issues of import on summary judgment.

[4] While it is undisputed that HMM intentionally struck Henriquez in the chest, Plaintiff argues that HMM did so because he was trying to "free himself." Ultimately, this dispute is not relevant to the issues of import on summary judgment.

actions toward HMM as a didactic measure but suggested he would 'look into it' after checking with others." Defs.'s Resp. 56.1 ¶ 9. "[T]he officer that applied the handcuffs, Waite, was not privy to and did not have the benefit of the discussions between Malgrat and [Major] regarding teaching a lesson at any time prior to or during his attempted handcuffing of HMM." *Id.*

Next, Malgrat conferred with the assistant state attorney, the school principal, and Henriquez "in an effort to guide his course of action." *Id.* Henriquez decided to press charges, at least in part because she believed HMM would get counseling as a result. Defs.'s 56.1 ¶ 10; Pl.'s Resp. 56.1 ¶ 10. The state attorney decided that HMM would be criminally charged with a felony under Florida law for striking a teacher. *Id.* Accordingly, "and based upon the credible victim report received from [] Henriquez that HMM punched her in the breast, Malgrat proceeded with a felony arrest, and charged HMM with one count of 'Battery Education Employee/Sports Official, DCF Others' under § 784.081(2)(C)." Defs.'s 56.1 ¶ 11; Pl.'s Resp. 56.1 ¶ 11. Malgrat informed Major of the decision to arrest HMM. *Id.* Even though Major was unclear as to whether HMM struck Henriquez intentionally or accidentally, Major did not object to or oppose the decision to arrest HMM, nor did he request any special accommodations for HMM in relation to the manner of arrest and transport. *Id.*

Malgrat, who could not leave the school, requested a unit to transport HMM since he could not personally do so. Defs.'s 56.1 ¶ 12; Pl.'s Resp. 56.1 ¶ 12. "Officers Waite and Sims arrived to complete the transport [and Major] requested that the officers wait until the end of the day, when everybody had left the school, to bring HMM to the police car so that HMM was not taken out in front of his peers." *Id.* The officers obliged. *Id.* Waite "gently patted down" HMM and then attempted to handcuff him, however, the handcuffs did not fit. Defs.'s 56.1 ¶ 13; Pl.'s Resp. 56.1 ¶ 13. HMM walked to the police car with no restraints. *Id.* Waite tied HMM's shoe and then

transported him to the Monroe County Jail where he spent several hours before being released to his father. *Id.* HMM did not suffer any physical pain or injury as a result of the attempted handcuffing, however, he suffered emotionally from the experience. Defs.'s 56.1 ¶ 16; Pl.'s Resp. 56.1 ¶ 16; Ex. 5 ("Dr. Seifert Report") (ECF No. 66-5) at 7–9.

The City's police department is a state accredited law enforcement agency, receiving its most recent reaccreditation in 2019. Defs.'s 56.1 ¶ 15; Ex. 4 ("2019 Reaccreditation") (ECF No. 62-4); Pl.'s Resp. 56.1 ¶ 15. The accreditation process required the City to "meet hundreds of standards established by the state law enforcement accreditation program" addressing "all facets of an agency, including administration, human resources, internal affairs, operations, investigations, patrol, policymaking, training, traffic and more." Defs.'s 56.1 ¶ 15; Pl.'s Resp. 56.1 ¶ 15. At the time of HMM's arrest, the City "had established polices, similar to model police policies," including one stating that "[a]ll persons in custody that are being transported shall be handcuffed." Defs.'s 56.1 ¶ 16; Ex. 3 ("Restraint Policy") (ECF No. 62-3) at 2; Pl.'s Resp. 56.1 ¶ 16. The Restraint Policy allows for exceptions at an officer's discretion "for prisoners/detainees who are elderly, frail, handicapped, young juveniles, or injured, when there is no indication that they are capable of successful escape or would pose a threat to the officer or others." *Id.* While the default is to handcuff prisoners and detainees with their hands behind their back, the policy provides officers with the discretion to handcuff young juveniles, among others, with their hands at their front. Defs.'s 56.1 ¶ 16; Restraint Policy at 2–3; Pl.'s Resp. 56.1 ¶ 16.

Neither Sims nor Waite felt that HMM posed a threat to anyone at the time of his arrest. Pl.'s Resp. 56.1 ¶¶ 28–29; Defs.'s Reply 56.1 ¶¶ 28–29. However, both Sims and Waite interpreted the City's Restraint Policy to require them to attempt to handcuff HMM upon arrest before invoking the exception pertaining to young juveniles. *Id.*; Pl.'s Resp. 56.1 Ex. 2 ("Waite

4

Dep. Tr.") (ECF No. 66-2) at 35:15–25, Ex. 3 ("Sims Dep. Tr.") (ECF No. 66-3) at 43:17–44:9. The City explained that its Restraint Policy does not require an attempted handcuffing in all circumstances depending on the totality of the circumstances. Pl.'s Resp. 56.1 ¶ 27; Ex. 6 ("City Dep. Tr.") (ECF No. 66-6) at 74:9–20.

On December 4, 2020, Plaintiff filed an Amended Complaint alleging violations of: (1) the Fourteenth Amendment (State Created Danger) Pursuant to 42 U.S.C. § 1983 against three school district employees and Malgrat (Count I), *see id.* ¶¶ 69–76; the Fourth Amendment (Excessive Force) Pursuant to 42 U.S.C. § 1983 against Malgrat, Waite, and Sims (Count II), *see id.* ¶¶ 77–86; the Fourth Amendment (Duty to Intervene) Pursuant to 42 U.S.C. § 1983 against three school district employees, Malgrat, Waite, and Sims (Count III), *see id.* ¶¶ 87–93; the Americans with Disabilities Act ("ADA") against the City (Count IV); *see id.* ¶¶ 94–104; and the Fourth and Fourteenth Amendments (Municipal Liability) Pursuant to 42 U.S.C. § 1983 against the City (Count V), *see id.* ¶¶ 105–114.

On March 2, 2021, the Court granted the school district employees' Motion to Dismiss, thereby dismissing Counts I and III against them. See (ECF No. 42). In Plaintiff's Response to the instant Motion for Summary Judgment, Plaintiff states that she previously agreed to dismiss Count I against Malgrat. *See* Resp. at 3. Thus, remaining before the Court for the purposes of the instant Motion for Summary Judgment are Counts II and III (excessive force and duty to intervene) against Malgrat, Waite, and Sims, and Counts IV and V (ADA and municipal liability) against the City. Defendants move for summary judgment as to all counts remaining against them. Contemporaneously with filing their Motion, Defendants also conventionally filed a video under seal depicting HMM's arrest as recorded on Waite's body worn camera, which the Court has reviewed. ("Arrest Video") (ECF No. 53-1).

**II.     LEGAL STANDARD**

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### III. DISCUSSION

Defendants argue that they are entitled to summary judgment because the attempted handcuffing of HMM did not constitute excessive force, and as a result there was no concomitant duty to intervene. Mot. at 3–8. Even if the attempted handcuffing was excessive force, Defendants argue that they are entitled to qualified immunity. *Id.* at 8–14. Defendants argue that the record demonstrates the absence of municipal liability. *Id.* at 14–17. Finally, Defendants argue that the ADA is not implicated in this case. *Id.* at 18–19. The Court addresses each argument in turn below.

#### A. Excessive Force and Duty to Intervene Claims

Defendants argue that the Amended Complaint and the Arrest Video neither describe nor show any "physical force other than an attempted handcuffing . . . if an attempted handcuffing may even be called force." Mot. at 3. Defendants argue that they had probable cause "to effect a full custodial seizure" based on the report of HMM's teacher that HMM had punched her in the chest, which is a battery under Florida law. *Id.* at 6. Further, Defendants argue that "[t]he force at issue here—which caused no pain or physical discomfort—cannot in any measure of good faith be deemed to violate the Fourth Amendment in light of the concept of de minimis force, and existing precedent." *Id.* Specifically, "HMM was delicately patted down, [] Waite attempted to apply handcuffs but could not successfully do so, and HMM was escorted to the car for transport unrestrained." *Id.* at 7. In the absence of any excessive force, Defendants argue that there was no duty to intervene. *Id.* at 8. Finally, Defendants argue that they are entitled to qualified immunity because of the "absence of authority that an attempted handcuffing, producing no injury, of an arrestee for transport violates the Fourth Amendment." *Id.* at 12.

Plaintiff first argues that handcuffing an 8-year-old "special needs boy" of HMM's

7

stature—3 feet, 6 inches, and 64 pounds—was a "significant use of force that caused a significant injury." Resp. at 4. Second, Plaintiff argues that "resolving all reasonable inferences in favor of the Plaintiff, based on the international news coverage that was negative against the police, a reasonable juror could very well conclude that the force used was not objectively reasonable" under the totality of the circumstances. *Id.* at 5. Third, Plaintiff argues that an expert opinion as to whether handcuffing HMM was objectively reasonable under these circumstances creates a dispute of material fact. *Id.* at 8. Fourth, Plaintiff argues that a dispute of material fact exists as to whether the handcuffs were used for the purpose of teaching HMM as lesson, and whether City policy required Defendants to attempt handcuffing. *Id.* at 8–10.

1.   Objectively Reasonable Conduct

"Pursuant to the Fourth Amendment, an officer may not use excessive force in the course of a lawful arrest." *Williams v. Sirmons*, 307 F. App'x 354, 360 (11th Cir. 2009) (per curiam) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "Likewise, a police officer with the ability to do so must intervene to stop another police officer's use of excessive force." *Id.* (citing *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924–25 (11th Cir. 2000)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citation and internal quotation marks omitted). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

"To determine whether an officer's force was unreasonable, the Supreme Court has directed that [courts] consider (1) the severity of the crime; (2) whether the individual 'posed an

8

immediate threat to the safety of the officers or others'; and (3) whether the individual 'actively resisted arrest or attempted to evade arrest by flight.'" *Patel v. City of Madison, Ala.*, 959 F.3d 1330, 1339 (11th Cir. 2020) (quoting *Graham*, 490 U.S. at 396) (alterations adopted)). The Eleventh Circuit has also considered "(4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury." *Id.* (citing *Lee v. Ferraro*, 284 F.3d 1188, 1197–98 (11th Cir. 2002); *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019)). Nonetheless, it remains well established in the Eleventh Circuit that "where an arrest is supported by probable cause, the application of de minimis force as needed to effect the arrest, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Williams*, 307 F. App'x at 360.

Following the dictates of *Graham*, the first question before the Court is whether Defendants' actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. The first, fifth, and sixth factors described in *Graham* and *Patel* weigh in favor of Defendants as HMM was charged with felony battery, any force applied was slight, and there was no pain or resulting physical injury. The second, third, and fourth factors weigh in favor of Plaintiff as HMM was a young juvenile who was not resisting arrest and posed no apparent threat. Balancing these factors does not tip the scale in either Parties' favor.

However, the Court cannot overlook the fact that—as depicted in the Arrest Video—Waite merely *attempted* to handcuff HMM for less than thirty seconds, causing no physical pain or injury. Waite then abandoned the effort and escorted HMM unrestrained. The officers explained to HMM why they were arresting him, speaking to him calmly and explaining the severity of his actions. HMM then climbed into the back of the police vehicle and buckled his seatbelt. Waite tied HMM's

shoe. While HMM was visibly upset during the incident, the attempted handcuffing can hardly stand to serve as the sole or primary basis for any emotional injury he suffered as a result of the events that transpired that day. Further, the relevant inquiry in assessing excessive force claims relates to *physical* harm suffered. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1325 (11th Cir. 2017) ("*The nature and extent of physical injuries sustained by a plaintiff are relevant in determining whether the amount and type of force used by the arresting officer were excessive.*") (emphasis in original). Plaintiff cites to no controlling authority holding that the act of handcuffing a young juvenile upon arrest, resulting in no physical pain or injury, is per se unreasonable or amounts to a Constitutional violation.[5] Even painful handcuffing does not, by itself, amount to excessive force. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (citing *Nolin v. Isbell*, 207 F.3d 1253, 1257–58 (11th Cir. 2000)).

---

[5] Plaintiff cites to cases from the Second and Fourth Circuits. In *Soares*, the Second Circuit rejected the notion that handcuffing is per se reasonable in all cases under *Graham*. *Soares v. State of Conn.*, 8 F.3d 917, 921 (2d Cir. 1993). *Soares* is inapposite because the Court does not hold that handcuffing is per se reasonable in all cases, but rather that it was not unreasonable here in a way that would amount to a Constitutional violation. Further, the Court went on to acknowledge the absence of caselaw recognizing a plaintiff's alleged right not to be handcuffed. *See id.* at 922. In *E.W.*, the Fourth Circuit held that "officers should not handcuff young students who may have committed minor offenses but do not pose an immediate threat to safety and will not evade arrest," however J. Shedd wrote separately concurring only in the judgment. *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 188–199 (4th Cir. 2018). J. Shedd specifically disagreed with the majority's view on handcuffing and expressed concern about the broad application that view might have. *Id.* J. Shedd wrote:

> I suspect . . . that the majority intends its excessive force holding to be broader. It is certainly not unreasonable to read the majority opinion as opening the door to permit all custodial arrestees to pursue (but not necessarily win) excessive force claims based on the mere fact that they were handcuffed. It may, perhaps, be slightly more reasonable to read the majority opinion as being limited to cases involving the handcuffing of certain juveniles who are arrested at school. Of course, either reading extends well beyond our precedent, runs counter to the prevailing federal rule, and will hinder law enforcement officers in safely and efficiently performing their duties.

*Id.* at 198.

Unlike a case where the Eleventh Circuit found an officer's use of handcuffs for the sole purpose of punishing and teaching a juvenile a lesson to be objectively unreasonable, *see Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1307 (11th Cir. 2006), here Defendants were effecting a lawful arrest.  And, unlike in *Gray* where the officer "tightened the handcuffs to the point that they caused [the juvenile] pain" and left them on her for "not less than five minutes," *see id.* at 1301, the officer here attempted for a moment to place the handcuffs on HMM, causing no pain, and then ultimately escorted him to the police car unrestrained.  Further, these actions were taken in the context of a juvenile who had a history of displaying anger issues and authority defiance, and whose behavioral problems were particularly pronounced throughout the week prior to his arrest for felony battery.  *See* Defs.'s 56.1 ¶ 2; Pl.'s Resp. 56.1 ¶ 2.  The Court cannot abandon the well-established principle that "where an arrest is supported by probable cause, the application of de minimis force as needed to effect the arrest, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Williams*, 307 F. App'x at 360.

Accordingly, under the totality of the circumstances, the Court does not find that Defendants violated HMM's constitutional rights, and Defendants Malgrat, Waite, and Sims are entitled to summary judgment as to the excessive force and duty to intervene claims.

2.   Qualified Immunity

Assuming arguendo that Defendants actions were not objectively reasonable—which the Court does not so hold—Defendants would nonetheless be entitled to qualified immunity.

"Qualified immunity provides complete protection for government officials sued in their individual capacities where their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Quinette v. Reed*, 805 F. App'x 696, 701 (11th Cir. 2020) (per curiam) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). A government official "is entitled to qualified immunity where his actions would be objectively reasonable to a reasonable [official] in the same situation." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 638–41 (1987)). To assert a qualified immunity defense, a government official must have been acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Id.* (citation omitted). Once the government official establishes that they were acting within the scope of their discretionary authority, the burden shifts to the plaintiff to show that the defendants violated a clearly established constitutional right. *See Carter v. Butts Cnty., Ga.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (citation omitted). Courts employ a two-step inquiry to determine whether government officials are entitled to qualified immunity: (1) the facts alleged in the complaint show the official's conduct violated a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S 223, 232 (2009). Courts need not address these steps in sequential order. *See id.* at 236.

To demonstrate that a constitutional right is clearly established, "a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "The rule must be settled law, . . . which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589–90. (internal citations and quotation marks omitted). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590 (citation omitted). The ultimate inquiry is "whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional." *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (citation and internal quotation marks omitted).

"The line between the lawful and the unlawful is often vague." *Barts v. Joyner*, 865 F.2d 1187, 1194 (11th Cir. 1989). "*Harlow*'s 'clearly established' standard demands that a bright line

be crossed." *Id.* "The line is not to be found in abstractions—to act reasonably, to act with probable cause, and so forth—but in studying how these abstractions have been applied in concrete circumstances." *Id.* Thus, "[a] constitutional right is clearly established if controlling precedent has recognized the right in a concrete and factually defined context." *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) (citations and internal quotation marks omitted). "A plaintiff cannot avoid the qualified immunity defense by referring to general rules and to the violation of abstract rights." *Id.* (citation and internal quotation marks omitted).

"[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (citation and internal quotation marks omitted). A court may, however, find that a right is clearly established in the absence of case law where the case is one of "obvious clarity"—one "where the officer's conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law' on point." *Id.* (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002)). "Under this test, 'the law is clearly established, and qualified immunity can be overcome, only if the standards set forth in *Graham* and [Eleventh Circuit] case law inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful.'" *Id.* (quoting *Lee*, 284 F.3d at 1199).

Here, it is undisputed that Defendants were acting within their discretionary authority when HMM was arrested. *See* Resp. at 3. Upon the burden shifting to Plaintiff to show that the Defendants violated a clearly established constitutional right, *see Carter*, 821 F.3d at 1319, the Court finds that Plaintiff has not met her burden. Specifically, Plaintiff has not demonstrated that "controlling authority" or a "robust consensus of cases of persuasive authority" stakes out a "bright

13

line" rule proscribing law enforcement officers from handcuffing juveniles upon executing a lawful arrest under factually similar circumstances. *See District of Columbia*, 138 S. Ct. at 589–90; *Oliver*, 586 F.3d at 907. Nor is this a case of "obvious clarity" where "the standards set forth in *Graham* and [Eleventh Circuit] case law inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." *See Oliver*, 586 F.3d at 907. Coming to such a conclusion here would, in effect, establish a per se proscription on an officer's ability to even attempt to handcuff a young juvenile in the absence of a perceived threat or flight risk.

Accordingly, even if there was a constitutional violation, Defendants would be entitled to qualified immunity as to the excessive force and failure to intervene claims. *See Oliver*, 586 F.3d at 907; *see also Callwood v. Jones*, 727 F. App'x 552, 560 (11th Cir. 2018) ("Because the law does not clearly establish that [the officer] used excessive force, the other officers had no duty to intervene.").

### B. Municipal Liability Claim

Defendants argue that the City cannot be liable under § 1983 since there was no underlying constitutional violation by the City's officers. Mot. at 14. Further, Defendants argue that the City "has shown that it is an accredited police agency with approved policies" and Plaintiff "cannot show that these policies promulgated by a state accredited agency, subject to comprehensive review, fall below 'the minimum standards in the industry' where they [meet] and/or exceed Florida's agency accreditation requirements." *Id.* at 15–16. Finally, Defendants argue that "no evidence supports that the City of Key West was deliberately indifferent in training the individual defendants." *Id.* at 17.

Plaintiff concedes that "[d]iscovery did not reveal a viable training claim against the City" and thus abandons any claim of municipal liability on a failure to train theory. Resp. at 3. However,

Plaintiff argues that "if it is determined that the use of force . . . was not objectively reasonable, a dispute of material fact exists regarding wither or not City policy was the moving force that caused the constitutional injury." *Id.* at 14.

A municipality is not liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, a municipality's liability under § 1983 attaches when a plaintiff shows "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Here, the Court has already concluded that HMM's constitutional rights were not violated. Thus, the City cannot be liable under § 1983. Accordingly, the City is entitled to summary judgment as to the municipal liability claim.

### C. ADA Claim

Defendants argue that "the record does not support that HMM has a disability within the meaning of the ADA or, even if he did, that any of the Defendants had knowledge of a qualifying disability." Mot. at 18. Further, "no evidence exists of a failure to accommodate HMM after his felony arrest." *Id.* at 19.

Plaintiff argues that Defendant Malgrat: (1) "knew or should have known that HMM suffered from a disability and that the disability needed to be accommodated"; (2) "admits that in training, he was forewarned that he will come in contact with special needs students who require accommodation"; and (3) "admits that he knew that there were special needs students attending the school in question, and that HMM was in the most restrictive program for unspecified reasons." Resp. at 12–13.

"Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities." *Owens v. Sec'y, Dep't of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (per curiam). To state a claim under Title II of the ADA:

> [A] plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing *Shotz v. Cates*, 253 F.3d 1077, 1079 (11th Cir. 2001)). Under the ADA, "[a] plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations." *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008)). "In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes 'a specific demand' for an accommodation." *Id.* (quoting *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)).

The record is sparse in terms of what theory Plaintiff relies on in support of her ADA claim, however, the Court construes the claim to allege that the City failed to provide HMM with reasonable accommodations, presumably based on his IEP and designation as a special needs child with social and emotional problems.[6] *See* Am. Compl. ¶ 101 ("The City, through its agents and

---

[6] In her Response to the Motion for Summary Judgment, Plaintiff attempts to raise a theory of intentional discrimination by arguing that "there is strong evidence suggesting that the only reason that HMM was arrested instead of the matter being handled as a disciplinary matter is *because of his disability*." This theory of discrimination is not pled in the Amended Complaint and is improperly before the Court at this juncture. Moreover, the record evidence Plaintiff cites to in support of this new case theory—the deposition of Henriquez who testified that in her view, the incident was a disciplinary matter that should been handled with HMM receiving

employees, failed to accommodate HMM's disability."); *see also* Pl.'s 56.1 ¶ 18 (discussing the City's lack of policies on how officers should interact with persons with disabilities or requiring that officers inquire if an arrestee has any disabilities that might require accommodation). Further, the record fails to demonstrate that (1) HMM has a qualifying disability under the ADA; (2) any Defendant knew of HMM's qualifying disability, or (3) HMM or his father requested an accommodation. *See Rylee*, 316 F. App'x at 906 (requiring that a plaintiff make a "specific demand" for an accommodation to support a failure to accommodate claim); *see also J.H. ex rel. J.P. v. Bernalillo Cnty.*, 806 F.3d 1255, 1262 (10th Cir. 2015) ("A learning disability alone does not necessary trigger the protections of the [ADA]."); *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1107 (9th Cir. 2014) ("We hold as a matter of law that the jury could not have found that ADHD substantially limited [the plaintiff's] ability to work with or to interact with others within the meaning of the ADA."); *Whitlock v. Mac-Gray, Inc.*, 345 F.3d 44 (1st Cir. 2003) ("[A] diagnosis [of ADHD] alone does not establish a disability within the meaning of the ADA."). Plaintiff's assertion that Malgrat "knew that there were special needs students attending the school in question, and that HMM was in the most restrictive program for *unspecified* reasons," is not sufficient to find that Defendant City violated the ADA under these circumstances. Resp. at 12–13 (emphasis added).

Accordingly, the City is entitled to summary judgment as to the ADA claim.

IV. **CONCLUSION**

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND

---

counseling—does not support an inference that the City is liable for intentional discrimination and create a genuine issue of material fact.

ADJUDGED that Defendants' Motion Summary Judgment (ECF No. 60) is GRANTED. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, final judgment shall be entered by separate order. The Clerk of Court is INSTRUCTED to CLOSE this case. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 14th day of June, 2021.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c: All counsel of record